# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYAN L. PAGE, | 1:10-cv-01605-SKO |
| Plaintiff, | **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | (Doc. 1) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## BACKGROUND

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to Titles II and XVI of the Social Security Act (the "Act"). 42 U.S.C. § 405(g). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 9, 10.) *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

**FACTUAL BACKGROUND**

**A.    Medical Evidence**

Plaintiff was born in 1963, has a ninth-grade education, and previously worked as a garbage collector and a truck driver. (Administrative Record ("AR") 26, 29-30.) On October 19, 2006, Plaintiff filed an application for SSI and DIB, alleging disability beginning September 1, 2005, due to back pain. (AR 15, 103-13.)

Plaintiff indicates that he had a back surgery in 1996. (AR 31, 188.) On May 28, 2003, a magnetic resonance imaging ("MRI") scan of Plaintiff's lumbar spine showed a small disk herniation causing mild lateral recess narrowing, a broad-based disk bulge, hypertrophy, spinal canal narrowing, minimal lateral recess narrowing, and mild neural foraminal narrowing. (AR 192-93.) In a November 5, 2004, medical evaluation, Bryan L. Page, M.D., noted that Plaintiff's x-ray showed L3-4 laminotomy, narrowing at multiple lumbar vertebrae, no spondylosis,[2] and no spondylolisthesis.[3] (AR 209.)

On September 19, 2005, Johnson K. Wong, M.D., Ph.D. ("Dr. J. Wong"), conducted a limited examination of Plaintiff noting that deep tendon reflexes were absent in Plaintiff's knees, and that Plaintiff felt pain when the lumbar spine was palpated. (AR 199.)

From September 26, 2005, to November 21, 2005, Plaintiff visited Kaiser Permanente several times and complained of back and spine pain. (AR 178-90.) Radiology reports on October 3, 2005, found good preservation of joint and disk space, no fractures, no dislocation, no compression deformities, pelvic bones intact, and a minimal osteophyte formation on the lower lumbar spine. (AR 189-90.)

On October 17, 2005, Dr. J. Wong conducted a limited examination of Plaintiff and described it as "normal." (AR 200.) On October 31, 2005, Andrew Finlay, M.D., examined Plaintiff and recommended heat, ice, massage, stretching, exercise, and physical therapy to alleviate Plaintiff's back pain. (AR 186.) In February 2006, Dr. J. Wong conducted an examination of Plaintiff and

---

[2] Spondylosis is defined as "[a]nkylosis of a vertebral joint [or] [d]egenerative spinal changes due to osteoarthritis." *Dorland's Illustrated Medical Dictionary* 1780 (31st ed. 2007) [hereinafter *Dorland's*].

[3] Spondylolisthesis is defined as "forward displacement . . . of one vertebra over another." *Dorland's* 1779.

noted diminished knee jerks and back pain. (AR 200.) In February or March 2006,[4] Plaintiff visited Dr. J. Wong to request a higher dose of Methadone, but also reported that his pain levels had improved. (AR 203.) A physical examination on this date revealed nothing related to Plaintiff's back pain. (AR 203.) On March 30, 2006, Dr. J. Wong noted that Plaintiff's back pain had increased, but he recommended no changes to Plaintiff's pain regiment. (AR 204.) On May 22, 2006, Plaintiff visited Dr. J. Wong regarding allergies. (AR 205.) Dr. J. Wong did not conduct a physical examination of Plaintiff and noted Plaintiff's statements that his back pain levels were the same. (AR 205.) On June 16, 2006, Dr. J. Wong again declined to increase Plaintiff's medication, opining that Plaintiff was "showing good medication which works for him," and noting that Plaintiff's prescribed dose of Methadone was equivalent to 400 mg of morphine daily. (AR 206.) Dr. J. Wong mentioned that, despite Plaintiff's back pain, he was walking regularly and losing weight. (AR 206.) Dr. J. Wong also noted that Plaintiff had "failed conservative pain management," and he recommended that Plaintiff try alternative treatments, that Plaintiff use his medications "in the most efficient ways to maximize the pain control," and that Plaintiff consider another back surgery. (AR 206.) In a letter dated November 20, 2006, Dr. J. Wong wrote that Plaintiff was "totally medically disabled" because of back pain. (AR 198.)

In December 2006, Ernest E. Wong, M.D. ("Dr. E. Wong"), a state agency physician, reviewed Plaintiff's medical records and concluded that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand or walk for a total of six hours in an eight-hour workday, with postural limitations on climbing, balancing, stooping, kneeling, crouching, and crawling. (AR 211-12.) The doctor opined that Plaintiff was credible for his conditions, but not their severity, and he recommended light work.[5] (AR 216.)

On April 10, 2007, Plaintiff returned to Dr. J. Wong with complaints of back pain. (AR 232.) Upon physical examination, Dr. J. Wong noted that Plaintiff's deep tendon reflexes were normal.

---

[4] This particular report appears between records dated February 13, 2006, and March 30, 2006. Though the report itself does not indicate a day or month, its date is presumed to be in February or March of 2006 due to its placement in the records. (*See* AR 203.)

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 406.967(b).

(AR 232.) Dr. J. Wong also opined that Plaintiff was "refractory to conservative pain management," but he also decided not to increase the pain medication and recommended acupuncture. (AR 232.) On May 22, 2007, Dr. J. Wong noted that Plaintiff's pain was "about the same," and described the physical examination as normal. (AR 233.)

State agency physician Durell Sharbaugh, M.D., reviewed the record and on May 22, 2007, opined that there was insufficient evidence to support a change from Dr. E. Wong's initial recommendation of light work with postural limitations. (AR 221-22.)

X-rays were taken of Plaintiff's lumbar spine, sacrum, and coccyx on July 1, 2007, because of a recent fall that resulted in no bone fractures. (AR 246, 234.) The spinal x-ray found vertebral body height within normal limits, no fracture or acute bony process, and some degeneration at the T11-12 level. (AR 246.) The sacrum and coccyxal x-ray found "very questionable buckling near the sacrococcyx junction," with the rest of the bones within normal limits. (AR 246.) On July 5, 2007, Dr. J. Wong saw Plaintiff regarding pain concerns resulting from the recent fall and noted that treatment would remain the same. (AR 234.)

A physical examination conducted by Dr. J. Wong on September 24, 2007, was normal. (AR 235.) On November 20, 2007, Plaintiff saw Dr. J. Wong for increased back pain; the doctor described his limited examination as normal. (AR 237.) The doctor noted that Plaintiff had failed chiropractry and steroid injections in the past. (AR 237.) Dr. J. Wong declined to increase pain medication doses noting that Methadone use adds to Plaintiff's danger of sleep apnea and night time anoxia. (AR 237.) Dr. J. Wong further stated that Plaintiff was "not ready for more surgery at present." (AR 237.)

Plaintiff visited the Emergency Room at Sonora Regional Medical Center on March 13, 2008, after another fall. (AR 239-40.) The examining Nurse Practitioner noted that the fall resulted in moderate effusion and diffuse tenderness on Plaintiff's left knee. (AR 239.) An x-ray was ordered which found moderate degenerative changes, some spurring of the tibia spines, and calcification on the lateral joint, but no fracture. (AR 244.)

A Social Security Disability Claim questionnaire completed by Dr. J. Wong on September 12, 2008, indicated that, upon examination and testing, Plaintiff presented neuro-anatomic

distribution of pain, positive straight leg raising test, severe burning or painful dysesthesia, the need to change position more than once every two hours, and an inability to ambulate effectively. (AR 248.) Dr. J. Wong also identified Plaintiff's pain as moderate to severe and reported that he was "uncertain" about lifting on an occasional basis and that he did not "recommend a job with lifting." (AR 248.) Dr. J. Wong also noted that Plaintiff should never bend, that he may occasionally stoop, and that "per patient," Plaintiff could stand for fifteen minutes at a time, sit for fifteen minutes at a time, and work four hours per day. (AR 248.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 58, 59, 60-64, 65, 68-69, 77-79.) On September 10, 2008, ALJ William C. Thompson, Jr., held a hearing. (AR 22-52.) During the hearing, Plaintiff testified that he stopped working in 2005 because of back pain and that he could not work presently because of back pain and pain in his left leg. (AR 29.) Plaintiff stated that the severity of his pain was getting worse and that it never subsided. (AR 38.) Further, Plaintiff indicated that he did take his pain medication but that it did not get rid of all his pain. (AR 32-33.) Plaintiff stated that on a typical day, he would crawl out of bed into his reclining chair. (AR 34.) According to the Plaintiff, he could stand for ten minutes at a time, walk for five minutes at a time, and sit for "only a couple minutes." (AR 34-35.) Plaintiff said that he could lift a gallon of milk but also reported that his wife had to help him use the bathroom and put on his shoes and socks. (AR 35.)

**C.    ALJ's Decision**

On January 22, 2009, the ALJ issued a decision finding Plaintiff not disabled since the date of his application on October 19, 2006. (AR 12–21.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since September 1, 2005; (2) has a combination of impairments that is considered "severe" based on the requirements in the Code of Federal Regulations; (3) does not have an impairment or combination of impairments that meets or equals one of the impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is unable to

perform any past relevant work; and (5) could perform jobs that exist in significant numbers in the national economy. (AR 17-23.)

**D.   Plaintiff's Appeal**

Plaintiff sought review of the ALJ's decision before the Appeals Council. On July 19, 2010, the Appeals Council denied review. (AR 1-3.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On January 22, 2009, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (AR 11.) Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility and in rejecting the opinion of the treating physician, Dr. J. Wong.

## SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or

mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.     The ALJ's Consideration of Plaintiff's Credibility**

Plaintiff contends that the ALJ failed to set forth legally sufficient reasons for rejecting his subjective complaints. According to the Commissioner, however, the ALJ gave clear and convincing reasons for finding Plaintiff not entirely credible.

### 1. Legal Standard

In evaluating the credibility of a claimant's testimony regarding subjective pain, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that his impairment "could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection. *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929. Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

### 2. Analysis

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. (AR 19.) Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing. As discussed below, the Court finds that the ALJ did not give clear and convincing reasons supported by substantial evidence in the record to discount Plaintiff's credibility.

### a.     The ALJ's Consideration of Plaintiff's Level of Treatment

Plaintiff argues that, because Dr. J. Wong noted that conservative pain management had failed and because he recommended that Plaintiff seek alternative treatment, the ALJ's determination that Plaintiff underwent only "conservative treatment" is erroneous. The ALJ found that Plaintiff's testimony about the severity of his symptoms was not credible because Plaintiff had received only very conservative pain treatment, pointing out that Plaintiff's doctor, Dr. J. Wong, "repeatedly refused the claimant's request for a higher dose [of Methadone]." (AR 19.) Though "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment," *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), there is no substantial evidence in the record to support the finding that Plaintiff's pain treatment was "very conservative" or that Plaintiff's doctors believed that only conservative treatment was necessary.

The ALJ implied that Dr. J. Wong refused to increase Plaintiff's prescription because his pain and symptoms did not warrant a higher dosage. (AR 19 ("His doctors appear to believe that only very conservative treatment is necessary . . . His doctor repeatedly refused the claimant's request for a higher dose of Methadone.").) While Dr. J. Wong did refuse to increase Plaintiff's dose of Methadone, Dr. J. Wong reported that this was because Methadone "adds to the danger of sleep apnea and night time anoxia," conditions to which Plaintiff is susceptible. (AR 18, 237.) Moreover, Dr. J. Wong noted that the amount of Methadone Plaintiff was prescribed was equivalent to 400 mg of morphine daily. (AR 206.) This does not support a finding that Dr. J. Wong refused to increase Plaintiff's dosage because his condition only warranted conservative treatment; rather, it indicates that Plaintiff was taking the highest dosage of Methadone that was safe. To reduce Plaintiff's pain without resorting to a higher Methadone dosage, Dr. J. Wong recommended that Plaintiff "use these medications in the most efficient ways to maximize pain control" and also try alternative medicine. (AR 206, 232.) The context of Plaintiff's medical records do not support an inference that Dr. J. Wong's decision not to increase the Methadone dosage was because a higher dose was unnecessary to treat Plaintiff's condition.

Further, Plaintiff points out that Dr. J. Wong determined that Plaintiff had "failed conservative pain management," indicating that Plaintiff's recommended treatment was not

conservative in nature. (AR 206.) Dr. J. Wong specifically noted that alternative treatments such as steroid injections and chiropractry had not alleviated Plaintiff's pain and other symptoms. (AR 237.) Moreover, Plaintiff had already undergone back surgery and was "not ready" for additional surgery. (AR 237 ("[Plaintiff] had back surgery in 1996 to the lower back which helped, but is not ready for more surgery at present.").) High dosages of prescription medication, steroid injections, chiropractry, and back surgery – all of which were unsuccessful in eliminating Plaintiff's pain – are not the type of over-the-counter treatments that indicate "very conservative" treatment. *Cf. Parra*, 481 F.3d at 751 (claimant's over-the-counter pain medication was "conservative treatment").

The medical evidence does not support the ALJ's finding that Plaintiff's doctors believed that only very conservative treatment was necessary to treat his condition. Thus, this is not a clear and convincing reason to discount Plaintiff's subjective testimony regarding his pain and limitations.

### b.     **Plaintiff's Prior Statements Regarding His Ability to Walk**

Plaintiff argues that Dr. J. Wong's observation that Plaintiff "began to walk regularly and lost weight" in 2006 is not inconsistent with Plaintiff's hearing testimony regarding his limitations. (AR 19.) The ALJ considered the fact that Plaintiff was walking regularly and losing weight in 2006, implying that such activity did not support Plaintiff's testimony at the 2008 hearing that Plaintiff could not walk for more than five minutes. (AR 19.) Though conflicts or inconsistencies in the claimant's testimony are permissible grounds upon which to discredit a claimant's testimony, *Moisa*, 367 F.3d at 885; *Thomas*, 278 F.3d at 958-59, the ALJ failed to explain why these two statements are in conflict. Plaintiff reported to Dr. J. Wong *and* testified at the hearing that his pain was increasing over time. (AR 38, 232, 237.) Furthermore, Plaintiff suffered two intervening injuries between 2006 and the date of the hearing: a fall in July, 2007, and another fall in March 2008. (AR 234, 239.) Thus, in the context of the additional accidents and statements that Plaintiff's condition was worsening, the fact that Plaintiff was walking regularly in 2006 is not necessarily inconsistent with his statement in 2008 that he was unable to walk for more than five minutes. The ALJ failed to give reasons why the worsening of Plaintiff's ambulation was an inconsistency; thus, this was not a clear and convincing reason to reject Plaintiff's subjective complaints.

        **c.**        **Plaintiff's Work History Prior to His Date of Claimed Disability**

The ALJ noted that Plaintiff was able to work from 1996 until 2005. (AR 19.) If this statement was intended as a reason to discount Plaintiff's credibility, it is not a clear and convincing reason to do so; Plaintiff's ability to work prior to 2005 does not bear on the question of his disability after 2006, and the ALJ offers no explanation or reasons why this work history is relevant. This is not a clear and convincing rationale for rejecting Plaintiff's subjective pain testimony.

        **d.**        **Inconsistencies with Medical Findings**

Plaintiff contends that the ALJ erred in finding Plaintiff's testimony inconsistent with certain objective medical findings because those medical findings predated his disability. The ALJ pointed out a discrepancy between Plaintiff's subjective complaints and the objective medical evidence, finding that the MRI of Plaintiff's lumbar spine revealed only mild abnormalities, and x-rays of Plaintiff showed no spondylosis or sponylolisthesis. (AR 19.) The ALJ implied that these mild findings were inconsistent with Plaintiff's testimony regarding his limitations. *See Connett v. Barnhart*, 340 F.3d 871, 873-74 (9th Cir. 2003) (holding that substantial evidence supported ALJ's decision to deny claimant's claim with respect to back, shoulder, and neck pain because, *inter alia*, X-rays, "CT scans," and myelograms were normal).

Without any further explanation from the ALJ, it is unclear why any of the objective medical evidence cited by the ALJ is inconsistent with Plaintiff's complaints of pain. First, the MRI cited by the ALJ as revealing only "mild" abnormalities was conducted in 2004, almost two years before Plaintiff claimed disability on October 19, 2006. (AR 209.) Without any explanation offered by the ALJ, the relevance of objective medical findings made *before* Plaintiff claims he became disabled is not evident, and it is not a clear and convincing reason to discount Plaintiff's credibility.

Second, to the extent that the x-rays cited by the ALJ were considered to be inconsistent with Plaintiff's testimony about his limitations and pain, at least one set of these x-rays was taken in 2004. (AR 209.) Again, the ALJ offered no explanation why a 2004 x-ray that shows mild findings is inconsistent with Plaintiff's statements about his limitations and pain after 2006. Moreover, the ALJ did not expressly determine that the 2004 x-rays revealed only mild findings; rather, the ALJ pointed out that the x-rays showed no spondylosis or spondylolisthesis. The ALJ did not set forth any

11

rationale to show why a negative finding for spondylosis or spondylolisthesis in 2004 implies a mild condition that belies Plaintiff's testimony about how he is limited by his impairments since 2006.

Third, the second set of x-rays referenced by the ALJ as showing no spondylosis or spondylolisthesis were taken in 2007, after Plaintiff's claimed date of disability. (AR 246.) Even assuming that a negative finding for spondylosis or spondylolisthesis implies a mild condition, these x-rays make no mention of spondylosis or spondylolisthesis or a lack thereof. (AR 246.) Nor did the ALJ detail any reasons why the 2007 x-rays were inconsistent with Plaintiff's testimony.

Finally, even assuming *arguendo* that the x-rays or the MRI are somehow inconsistent with Plaintiff's testimony, these inconsistencies may not be the sole reason for rejecting subjective complaints of pain, *Light*, 119 F.3d at 792, but are one factor which may be considered with others. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). As previously discussed, the ALJ did not state any other clear and convincing reasons for rejecting Plaintiff's testimony.

In sum, the ALJ's interpretation of the claimant's testimony was not supported by substantial evidence. The ALJ failed to cite clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of his symptoms. *Smolen*, 80 F.3d at 1289.

**B.    The ALJ's Assessment of Treating Physician Dr. J. Wong's Opinion**

Plaintiff maintains that the ALJ inappropriately discredited Dr. J. Wong's opinion. Defendant disputes this assertion and argues that the ALJ properly discounted Dr. J. Wong's opinion with specific and legitimate reasons.

**1.    Legal Standard**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *See* 20 C.F.R. §§ 416.902, 416.927; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed

to cure and, therefore, have a greater opportunity to know and observe the claimant. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. The ALJ may only give less weight to a treating or examining physician's opinion that conflicts with the medical evidence, however, if the ALJ provides specific and legitimate reasons for discounting the opinion. *See Lester*, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); *see also Orn*, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'" (citations omitted)); Social Security Ruling ("SSR") 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).[6]

### 2. Analysis

Because the opinions of the treating physician, Dr. J. Wong, were contradicted by the nonexamining state agency medical consultants, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. J. Wong's opinion.

First, the ALJ discounted Dr. J. Wong's opinion because the doctor appeared to be advocating on behalf of the Plaintiff. (AR 19.) However, the ALJ did not provide specific reasons as to why Dr. J. Wong was acting as an "advocate." It is inappropriate to find that the treating physician is improperly acting as an advocate without specific evidentiary support for that conclusion. *See Lester*, 81 F.3d at 832. Because the ALJ simply concluded that Dr. J. Wong was "advocating" without any supporting rationale, this is not a specific and legitimate reason supported by substantial evidence for discounting the opinion of Dr. J. Wong.

Second, the ALJ pointed out that Dr. J. Wong did "not appear to be specially versed in the definitions of work and disability" used for determining Social Security disability claims when

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding precedent upon ALJs. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Gatliff v. Comm'r of Soc. Sec. Admin.*, 172 F.3d 690, 692 n.2 (9th Cir. 1999).

considering Dr. J. Wong's opinion that Plaintiff is "totally medically disabled." (AR 19, 198.) An ALJ is "responsible for making the determination or decision about whether [plaintiffs] meet the statutory definition of disability." 20 C.F.R. § 404.1545(e)(1). Whether or not a plaintiff is "disabled" is an administrative finding and is reserved to the ALJ. SSR 96-5p. "[E]ven when offered by a treating source, [opinions on whether an individual is disabled] can never be entitled to controlling weight or given special significance." *Id.* While Defendant correctly notes that the determination of disability is reserved to the ALJ, the ALJ still must provide reasons for rejecting Dr. J. Wong's opinion about Plaintiff's medical condition. *See Lester*, 81 F.3d at 830-31; SSR 96-2p.

To that end, the ALJ found Dr. J. Wong's claim that Plaintiff was "totally medically disabled" was not supported by medical evidence. (AR 19.) Specifically, the ALJ observed that in "two months," with no intervening examination, "Dr. Wong's opinion ha[d] changed from an opinion that the claimant could possibly do sedentary or perhaps even light work, to that of a total finding of disability, without any physical changes in the claimant's condition." (AR 19.)

Plaintiff correctly points out that the ALJ misstated the dates of Dr. J. Wong's disability opinions, and that actually one year and two months elapsed between Dr. J. Wong's respective opinions. (AR 19, 198, 199.) In September 2005, Dr. J. Wong stated that Plaintiff could "not do physical work anymore." (AR 199.) Dr. J. Wong saw Plaintiff seven times over the course of the following fourteen months and conducted five physical examinations during those visits. (AR 200-07.) In November 2006, Dr. J. Wong opined that Plaintiff was "totally medically disabled at present." (AR 198.) The Court may not make findings about what the ALJ's conclusion would have been had he considered the intervening examinations. *See Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (bedrock principle of administrative law that a reviewing court can affirm only on the grounds articulated by the agency).

The ALJ's stated reason for dismissing Dr. J. Wong's opinion was based on two facts: (1) only two months elapsed between the doctor's change in opinion, and (2) there were no intervening examinations during that time. A review of the correct dates of the records reveals that neither of these facts is true. Though this mistake would not render the ALJ's determination invalid if the error

were "inconsequential to the ultimate nondisability determination," *Stout v. Comm'r of Soc. Sec. Admin*, 454 F.3d 1050, 1055 (9th Cir. 2006), in considering both the actual time between the opinions as well as the multiple intervening examinations, this Court cannot confidently state that no reasonable ALJ would have reached a different conclusion. *Stout*, 454 F.3d at 1056 ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination.").

Finally, the ALJ gave less weight to Dr. J. Wong's opinion because it was based on Plaintiff's subjective complaints and "not based on his medical judgment."  (AR 19.)  "A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602 (internal quotation marks omitted).  As explained above, the ALJ did not properly discount Plaintiff's credibility.  Consequently, the ALJ improperly rejected Dr. J. Wong's findings to the extent they were based on Plaintiff's subjective complaints.

In conclusion, the ALJ failed to give specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. J. Wong's opinion.  Accordingly, the ALJ improperly discounted the treating physician's opinion.

## C.     Remand Is Required

The ALJ did not provide specific and legitimate reasons based on substantial evidence in the record to discount the opinion of Dr. J. Wong, nor did the ALJ offer clear and convincing reasons for rejecting the testimony of Plaintiff.

Generally, "[w]here the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*, 81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989))).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true, the evidence supports a finding of disability. *See Smolen*, 80 F.3d at 1292.  Also, "where the ALJ improperly rejects the claimant's testimony regarding his limitations, and the claimant would be

disabled if his testimony were credited, 'we will not remand solely to allow the ALJ to make specific findings regarding that testimony.'" *Lester*, 81 F.3d at 834 (quoting *Varney v. Sec'y of Health and Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988)).

Courts retain flexibility, however, in applying this crediting-as-true theory. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true). "In some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able claimant." *Barbato v. Comm'r of Soc. Sec. Admin.*, 923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good-faith error in that some of his stated reasons for rejecting a physician's opinion were legally insufficient).

Here, the ALJ erred because of some factual oversights and because several of the stated reasons for discrediting the Plaintiff's testimony and Dr. J. Wong's opinion are legally insufficient. "Such good faith errors inevitably will occur. Reasonable judicial minds sometimes will disagree regarding proper application of the rather imprecise standard of 'specific, legitimate' reasons." *Barbato*, 923 F. Supp. at 1278. In these circumstances, it is appropriate to remand this matter for further administrative proceedings. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Cf. Benecke*, 379 F.3d at 593; *Harman*, 211 F.3d at 1178. Here, remand is appropriate because the ALJ must properly address Plaintiff's testimony and Dr. J. Wong's opinion. *See Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009).

///

///

///

///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, REVERSED and the case REMANDED to the ALJ for further proceedings consistent with this order. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff BRYAN L. PAGE and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   June 28, 2011**                              /s/ Sheila K. Oberto
                                                        UNITED STATES MAGISTRATE JUDGE